# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

STEWART PERSINGER,

    Petitioner,

-vs-                                                            Case No. 8:17-cv-451-T-02CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Stewart Persinger, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Doc. 1). He subsequently filed an amended petition (Doc. 19). Upon consideration of the amended petition, the court ordered Respondent to show cause why the relief sought in the amended petition should not be granted (Doc. 22). Thereafter, Respondent filed a response in opposition (Doc. 25), to which Mr. Persinger replied (Doc. 28). He subsequently filed an amended reply (Doc. 34). Finally, Mr. Persinger's motion to dismiss Grounds One, Two, and Four of the amended petition (Doc. 57) was granted (Doc. 65). Accordingly, one ground for relief (Ground Three) remains:

> Trial counsel proved ineffective for failing to make any efforts to challenge or litigate the excessive weapons frisk performed by Deputy Peterson (Doc. 19, pp. 15-19).

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Mr. Persinger was charged by a Second Amended Felony Information with two counts of burglary, one count of possession of marijuana, and one count of loitering or prowling (Resp. Ex. 1, record pp. 48-49). He filed a Motion to Suppress (id., record pp. 56-58) in which he argued that the evidence discovered during a search of his person should be suppressed because the deputies who

searched him did not have 1) a warrant, 2) probable cause that he committed a traffic violation on his bicycle, or 3) reasonable suspicion that he was involved in any criminal conduct.

A hearing was held on the motion (Id., record pp. 219-310). During the hearing, Deputies Peterson, Gonzales-Guerro, and Liddick testified for the State, and Mr. Persinger testified for the defense (Id.). Deputy Peterson testified that while responding to a possible auto burglary in a residential area at approximately 2:00 a.m., he was driving around and saw Mr. Persinger riding a bicycle approximately half-a-mile from where the burglary took place (Id., record pp. 225-26). Mr. Persinger was the only person Deputy Peterson saw while searching the area (Id., record p. 227). The lights on the bicycle Mr. Persinger was riding were not illuminated (Id., record p. 228). Deputy Peterson made eye contact with Mr. Persinger and shouted out the car window "Stop. Sheriff's Office." Mr. Persinger peddled away at a high rate of speed, then turned and cut in between two houses (Id., record p. 229). Deputy Peterson notified Deputy Liddick, who was a K-9 officer (Id.). They searched for Mr. Persinger and found him hiding underneath some bushes (Id., record pp. 230-31). His bicycle was also hidden by the bushes, and the lights still were not illuminated (Id., record pp. 231-32). By that time Deputy Gonzales-Guerro had arrived, and they removed Mr. Persinger from the bushes and handcuffed him (Id., record p. 232).

Because Deputy Liddick had advised Deputy Peterson that Mr. Persinger had been reaching for his pockets, Deputy Peterson searched him to make sure he was not carrying any weapons (Id.). Deputy Peterson discovered that Mr. Persinger had gift cards to women's clothing stores and debit cards with other people's names on them (Id.). At that point Mr. Persinger was detained, and Deputy Gonzales-Guerro read him his *Miranda* rights (Id., record p. 233). The deputies gave Mr. Persinger an opportunity to explain why he was in the area, but his answers did not dispel the deputies' concern that he had no legitimate reason to be in the area (Id., record pp. 233-34). Mr. Persinger was arrested for loitering and

prowling (Id., record p. 235). And because the female victim stated that the gift card for the women's clothing store that Mr. Persinger had was missing from her wallet that was in her vehicle, Mr. Persinger was also charged with burglary (Id., record pp. 235-36).

Deputy Gonzales-Guerro testified that when she arrived, she observed that Mr. Persinger appeared to be hiding under some bushes, and she heard Deputy Liddick ordering Mr. Persinger to get up and to get his hands away from his pockets (Id., record p. 254). When Mr. Persinger came out from the bushes, he was detained at that point, and Deputy Peterson searched him for "safety purposes" (Id., record p. 255). Deputy Gonzales-Guerro read the *Miranda* rights to Mr. Persinger (Id.). They recovered a pack of cigarettes off the ground where Mr. Persinger had been sitting, and inside the pack were credit cards, gift cards, and a baggie of marijuana (Id., record p. 257).

Deputy Liddick testified that he was searching for the burglary suspect with his K-9 dog (Id., record p. 267). He responded to Deputy Peterson's call regarding a suspicious person (Id., record p. 268). While searching the vicinity, he saw no other people in the area until he and Deputy Peterson found Mr. Persinger's bicycle and Mr. Persinger hiding under the bushes (Id., record pp. 268-71). The bicycle lights were not illuminated (Id., record p. 270). When Mr. Persinger crawled out from under the bushes, Deputy Liddick ordered him to show him his hands (Id., record p. 271). Although Mr. Persinger, who was on his knees at the time, initially raised his hands up, he dropped them and began reaching into his pocket (Id.). After Deputy Liddick again ordered him to show him his hands and Mr. Persinger complied, he nonetheless put his hands down again and pulled something out of his pocket (Id.). Mr. Persinger dropped the item that was in his hand after Deputy Liddick again ordered him to raise his hands (Id.). When the other deputies got Mr. Persinger up off the ground, Deputy Liddick saw a pack of cigarettes on the ground where Mr. Persinger had been kneeling (Id., record p. 272).

3

Mr. Persinger testified that there were lights on the front and back of his bicycle, both of which were operable at the time of the incident (Id., record p. 276). He further testified that both lights were illuminated at the time Deputy Peterson first saw him and ordered him to stop (Id., record pp. 276-77).

At the conclusion of the hearing, the trial judge denied the motion to suppress (Id., record p. 304). The judge reasoned that under all the circumstances, including that Deputy Peterson was responding to a report of a recent burglary in the area, Mr. Persinger was the only individual in the vicinity, which was a residential area, and it was 2:00 a.m., Deputy Peterson was "justified in initiating at least an encounter." (Id., record p. 302). And after Mr. Persinger fled, that justified "more encounter and pursuit." (Id., record p. 303).

Mr. Persinger subsequently pleaded no contest to all four counts (Respondent's Ex. 1, record pp. 91-93). He preserved the right to appeal the denial of his motion to suppress (Id., record p. 91). On appeal he challenged, among other things, the denial of his motion to suppress (Respondent's Ex. 2). The appellate court affirmed (Respondent's Ex. 7).

Mr. Persinger filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure alleging several grounds of ineffective assistance of trial counsel (Respondent's Ex. 8). He subsequently filed several amendments to the Rule 3.850 motion (Respondent's Exs. 9-13). The Rule 3.850 motion and amendments thereto were denied (Respondent's Ex. 14), and the denial was affirmed on appeal (Respondent's Ex. 21).

Mr. Persinger thereafter filed his federal habeas petition and amended petition in this court.

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Persinger filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry*

*v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of

6

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## III. ANALYSIS

Mr. Persinger contends that defense counsel was ineffective in failing to challenge the "excessive weapons frisk performed by Deputy Peterson." He alleges that before he was arrested, Deputy Peterson

patted him down to search for weapons. According to Mr. Persinger, "credit cards with other peoples [sic] names were removed from [his] pockets." He argues that counsel should have challenged the search on the grounds that: 1) there was no reason to perform the "frisk;" and 2) Deputy Peterson "exceeded the scope of the weapons frisk by removing the credit cards from the Petitioner's pockets and by examming [sic]/inspecting the names and information on them." He further argues that had counsel so argued, "theres [sic] a reasonable probability that the evidence would have been suppressed. . . ."

This claim was raised in "Ground #10" of Mr. Persinger's amendments to his Rule 3.850 motion (Respondent's Ex. 10, pp. 3-4; Ex. 11, pp. 8-10). In denying this claim, the state post-conviction court stated:

> Defendant alleges that counsel was ineffective for failing to challenge the "excessive 'safety' search of the Defendant" by Deputy Peterson. First, Defendant argues that Deputy Peterson never articulated a reason for believing that the Defendant was armed. Secondly, he argues that even if Deputy Peterson had reason to believe Defendant was armed, "Peterson's action of removing a cigarette pack from the defendant's pocket and then inspecting the inside and the contents of the cigarette pack exceeded the safety search."
>
> This claim is without merit. Because the trial court determined that Deputy Peterson had probable cause to arrest the Defendant for loitering or prowling, the stolen property and marijuana found on the Defendant was legally obtained evidence. Trial counsel cannot be found ineffective for failing to challenge the "excessiveness" of Defendant's pat down when the search of his person was pursuant to a lawful arrest. Such an argument would have been rejected by the trial court. Because counsel cannot be deemed ineffective for failing to make a meritless objection, Ground #10 is hereby **DENIED**.

(Respondent's Ex. 14, pp. 13-14).

The state post-conviction court's denial of this claim was not objectively unreasonable because prior to the search of Mr. Persinger, the deputies had probable cause to arrest him for the offense of loitering or prowling. Deputy Peterson, who was responding to a dispatch regarding two automobile

8

burglaries, first saw Mr. Persinger riding on a bicycle after 2:00 a.m. in a residential neighborhood near the area of the burglaries. According to Deputy Peterson, the lights on the bicycle were not illuminated. When Deputy Peterson shouted "Stop. Sheriff's Office," Mr. Persinger stood up on the pedals of his bicycle and rode away very quickly. When Deputy Peterson turned to see where Mr. Persinger was going, he saw Mr. Persinger turn his head back to look at Deputy Peterson and ride his bicycle off the sidewalk and between two houses. Deputies Peterson and Liddick pursued Mr. Persinger and found him and his bicycle hiding under bushes in a yard of a residence at which he did not live.

Florida's loitering or prowling statute, Section 856.021, Florida Statutes, provides:

(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Deputy Peterson's observation of Mr. Persinger riding his bicycle without lights on at 2:00 a.m. in a residential area and riding his bicycle off the sidewalk between two houses satisfied the first element of Section 856.021 because the deputies saw him prowling in a place, time, and manner "not usual for

9

law-abiding individuals." And the second element was satisfied because the deputies were entitled to be justifiably and reasonably concerned that the property of others was at risk based on the recent car burglaries in the vicinity, Mr. Persinger fleeing from Deputy Peterson when he saw him, and Mr. Persinger concealing himself in the bushes. *See C.H.S. v. State*, 795 So. 2d 1087, 1090 (Fla. 2d DCA 2001) ("Alarm is presumed under the statute if the defendant flees, conceals himself or any object, or refuses to identify himself when a law officer appears.") (citations omitted). Accordingly, there was probable cause to arrest Mr. Persinger under Section 856.021 before Deputy Peterson searched Mr. Persinger.[1]

Once the deputies had probable cause to arrest Mr. Persinger, they were entitled to search him incident to the arrest. *See United States v. Graves*, 2008 WL 11383871, at *8 (N.D. Ga. June 9, 2008), *report and recommendation adopted*, 2008 WL 11383954 (N.D. Ga. July 3, 2008) ("It is well-recognized that police may search a person incident to a lawful arrest, and that they may search not only an arrestee's person but also the area within his immediate control.") (citing *Chimel v. California*, 395 U.S. 752 (1969)). And, despite Mr. Persinger's argument to the contrary, it is irrelevant that the arrest occurred immediately after the search, since sufficient probable cause existed for the deputies to arrest before the search. *See United States v. Banshee*, 91 F.3d 99, 102 (11th Cir. 1996) ("[B]ecause there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that Banshee was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable.") (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *United States v. Thornton*, 733 F.2d 121, 128 n. 9 (D.C. Cir.1984)).

---

[1] "Probable cause to arrest exists when the totality of the circumstances warrants a reasonable belief that the suspect has committed or is committing a crime." *United States v. Torres-Bonilla*, 556 F. App'x 875, 879 (11th Cir. 2014) (citing *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir.2007)).

Lastly, to the extent that Mr. Persinger argues that the search was "excessive" because Deputy Peterson removed "the credit cards from [Mr. Persinger's] pockets and...examin[ed]/inspect[ed] the names and information on them," the deputies were entitled to seize and inspect the items discovered on Mr. Persinger. *See United States v. Robinson*, 414 U.S. 218, 223–24, 236 (officer was entitled to inspect cigarette package found on arrestee's person, and therefore heroin capsules found in the package were admissible); *United States v. McFarland*, 633 F.2d 427, 429 (5th Cir.1980) (officer was entitled to read a piece of notebook paper removed from defendant's shirt pocket incident to his arrest).

Viewing the record as a whole, a reasonable attorney could conclude that a motion to suppress the evidence discovered on Mr. Persinger on the grounds that there was no justification for the search, and the deputies were not permitted to remove and inspect the gift and debit cards, would not be successful. The search was a lawful search incident to arrest,[2] and the deputies were entitled to inspect the cigarette package and cards found therein to determine whether they had evidentiary value.

The state court's denial of this claim was not an unreasonable application of *Strickland*. Nor was the decision based on an unreasonable determination of the facts. Accordingly, Mr. Persinger is not entitled to federal habeas relief on Ground Three of the amended petition.

Any of Mr. Persinger's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

---

[2]Because it was dark outside and Mr. Persinger continued to attempt to reach into his pockets despite Deputy Liddick's orders to show his hands, Deputy Peterson likewise was entitled to frisk Mr. Persinger for weapons. *See United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012) ("Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened."); *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir.1987) ("The circumstances surrounding the stop support the officer's belief that a further frisk for weapons was warranted. The hour was late, the street was dark, the officer was alone, and the suspected crime was burglary, a felony that often involves the use of weapons.").

1. The Amended Petition for Writ of Habeas Corpus (Doc. 19) is **DENIED**. The **Clerk** shall enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case because Mr. Persinger cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Mr. Persinger is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on ___March 22d___, 2019.

WILLIAM F. JUNG
United States District Judge

SA: sfc
Copies to:
Stewart Persinger, *pro se*
Counsel of Record